**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In re:

NM HOLDINGS CO., LLC, et al.,

       Debtor,

_____

STUART A GOLD, CHAPTER 7 TRUSTEE OF NM HOLDINGS COMPANY, LLC (f/k/a VENTURE HOLDINGS COMPANY, LLC), et al.

       Plaintiff,

v.

DELOITTE & TOUCHE LLP,

       Defendant.
_____/

Civil Case No. 08-15283

Bankruptcy Case No. 03-48939
Adv. Pro. No. 06-4615

HON. MARIANNE O. BATTANI

**OPINION AND ORDER ADOPTING THE BANKRUPTCY COURT'S RECOMMENDATION AND DISMISSING COUNTS 1, 2, AND 3 OF THE FIRST AMENDED COMPLAINT**

    This matter is before the Court on Plaintiff Stuart Gold's Objections to the Bankruptcy Court's recommendation that this Court dismiss Counts 1, 2, and 3 of the First Amended Complaint.  (<u>See</u> Bankr. case no. 06-4615, docs. 120, 122).  For the reasons that follow, the Bankruptcy Court's recommendation is **ADOPTED.**

I.      **INTRODUCTION**

This is an adversary proceeding wherein Gold, the chapter 7 bankruptcy trustee of eleven jointly-administered bankruptcy cases, is seeking damages from Defendant Deloitte and Touche, LLP ("Deloitte").  This proceeding arises out of the chapter 11 bankruptcy cases filed by Venture Holdings Company, LLC and ten related entities (collectively "Venture").

On January 21, 2005, the Bankruptcy Court denied confirmation of Venture's second amended joint chapter 11 plan.  Almost a year later, the chapter 11 reorganization proceedings were converted to chapter 7 liquidation proceedings, and Gold was appointed the chapter 7 trustee.

On March 31, 2006, Gold filed the complaint leading to this case in Wayne County Circuit Court.  In the complaint, he claimed that Deloitte committed acts of professional negligence (Count 1), aiding and abetting a breach of fiduciary duty (Count 2), disgorgement of fees (Count 3), and fraudulent transfers (Count 4).  Deloitte removed the case to this Court and, after Gold filed his first amended complaint, it filed a motion to dismiss.  The case was referred to the Bankruptcy Court pursuant to E.D. Mich. LR 83.50(a).  See 28 U.S.C. §§ 157 and 1334(b).

Under E.D. Mich. LR 83.50(a), bankruptcy judges hear and decide all core proceedings, but they may only file recommendations regarding non-core proceedings. Although the parties may consent to have a bankruptcy judge decide non-core proceedings, the parties in this case did not so consent.

The bankruptcy judge considered Deloitte's Motion to Dismiss and determined that Counts 1, 2, and 3 constituted non-core proceedings and that Count 4 constituted a

core proceeding. The bankruptcy judge then recommended that this Court dismiss Counts 1, 2, and 3: Count 1 because Gold could not show causation; Count 2 because it was barred by the statute of limitations; and Count 3 because it was only a remedy and not an independent cause of action. In addition, the bankruptcy judge dismissed Count 4 (the core proceeding) because it was time-barred.

Gold filed objections to the bankruptcy judge's recommendations regarding Counts 1 and 2 and appealed the bankruptcy judge's decision regarding Count 4. The present proceeding constitutes this Court's consideration of Gold's objections to the Bankruptcy Court's recommendations regarding Counts 1 and 2. Gold's appeal of the bankruptcy judge's decision regarding Count 4 is before this Court as a separate case.[1] After consideration of the bankruptcy judge's recommendation to dismiss Counts 1, 2, and 3, and Gold's objections to that recommendation, the Court adopts the bankruptcy judge's recommendation and grants Deloitte's Motion to Dismiss as it relates to Counts 1, 2, and 3.

## II.   STATEMENT OF FACTS

Gold alleges the following facts in his first amended complaint. In the years leading up to Venture's bankruptcy filing, it had a number of secured creditors and unsecured noteholders. (Bankr. case no. 06-4615, doc. 79 at 61). These creditors and noteholders imposed a number of restrictions on Venture. (Id. at 61-63). In particular,

---

[1] In that appeal, this Court issued an order on this date affirming the Bankruptcy Court's dismissal of Count 4. See Gold v. Deloitte and Touche, LLP, No. 08-14567 (E.D. Mich.).

Venture was prohibited from making related-party transactions unless they were consummated on terms no less favorable than those Venture would have obtained in an arms-length transaction with an unrelated party. (Id. at 61-62). Venture also was prohibited from making distributions to Larry Winget, who was effectively Venture's sole shareholder, and was required to satisfy various financial reporting requirements. (Id.). If Venture failed to comply with these requirements, its creditors and noteholders had broad powers to force Venture to cure the failure and, if Venture did not cure, they could compel Venture to immediately pay all outstanding amounts owed. (Id. at 62). In addition, Venture was required to form a "Fairness Committee" to review related-party transactions. (Id. at 63). One member of this committee had to be independent of Venture and its principals. This member, Maurice Williams, had veto power over related-party transactions. (Id.).

Gold alleges that Deloitte served as Venture's independent auditor from 1987 through at least May 2004. (Id. at 2). During this time, Winget caused Venture to transfer tens of millions of dollars to various related entities without receiving anything in return. (Id.). Winget received the benefit of these transactions because he wholly owned and/or controlled each of these related entities. (Id. at 4-5).

According to Gold's allegations, Deloitte audited Venture's financial statements from 1995 through 2001 in a negligent or reckless manner. Venture was required to submit various filings to the Securities Exchange Commission because it had public debt, and these filings both failed to disclose material related-party transactions and falsely stated that other related-party transactions were fair to Venture. (Id. at 2-3). Furthermore, Deloitte knew that some of Venture's related-party transactions "were not

bona-fide business transactions and that Venture was not receiving anything of value from those parties in exchange for the multimillion dollar payments." (Id. at 3). Nevertheless, Deloitte represented that these transactions were "on terms no less favorable to the company than would be obtained if such transactions or arrangements were arms-length transactions with non-affiliated persons." (Id.). If Deloitte had properly disclosed the unfair related-party transactions, "independent third-parties with the power to stop and prevent the continuance of such ongoing transactions would have done so, preventing Winget from siphoning Venture's assets." (Id.). Deloitte knew that its independent auditor reports would be relied upon by Venture and third-parties, and its failure to alert these parties to the improper transactions caused Venture damages in excess of $300 million. (Id. at 2, 5-6).

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a district court to dismiss a complaint that fails "to state a claim upon which relief may be granted." "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true." Tidik v. Ritsema, 938 F. Supp. 416, 421 (E.D. Mich. 1996). Thus, when faced with a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true." In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

5

recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations, quotations, and alteration omitted).

**IV.    ANALYSIS**

As an initial matter, Gold does not object to the bankruptcy judge's recommendation that this Court dismiss Count 3. Accordingly, the Court grants Deloitte's motion to dismiss as it relates to Count 3. Gold does object, however, to the bankruptcy judge's recommendation that this Court dismiss Counts 1 and 2.

Count 1: Professional Negligence

The bankruptcy judge recommended that Count 1 be dismissed because Gold could not satisfy the causation element of his professional negligence claim. In particular, the bankruptcy judge found that, in order to establish causation, Gold must allege that Venture relied upon Deloitte's reports. Because Venture did not rely on the reports, the judge determined that Gold could not establish causation. Gold objects that this recommendation is erroneous because (1) reliance is not needed to show causation; (2) even if reliance is necessary, the independent member of the Fairness Committee and third-parties with the power to stop the improper transactions relied on Deloitte's audits; and (3) the bankruptcy judge should not have imputed Winget's knowledge to Venture.

In Michigan,

> To establish a prima facie case of negligence, a plaintiff must be able to prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. Proof of causation

> requires both cause in fact and legal, or proximate, cause. Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct. On the other hand, legal cause or proximate cause normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.

Haliw v. Sterling Heights, 464 Mich. 297, 309-10 (2001) (citations and quotation omitted). "When a number of actors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury." Brisboy v. Fibreboard Corp., 429 Mich. 540, 547 (1988).

The Court finds that FDIC v. Ernst & Young, 967 F.2d 166 (5th Cir. 1992), is particularly relevant to this case. In that case, Jarrett Woods, the sole owner of Western Savings Association ("Western"), falsified Western's books. Id. at 168. Subsequently, Western got into trouble for regulatory violations and hired Arthur Young to audit its books. Id. In 1984 and 1985, Young indicated that Western had a net worth of $41 million and $49 million respectively. Id. In fact, Western was insolvent by more than $100 million and more than $200 million respectively. Id. The FDIC subsequently filed suit against Arthur Young on behalf of Western. Id. at 169.

The court held that, under Texas law, "[i]f nobody relied upon the audit, then the audit could not have been a substantial factor in bringing about the injury," and therefore could not have been the cause of the relevant damage. Id. at 170 (quotation omitted). The court went on to note that Woods did not rely on the audit because he knew of the business's precarious financial position. Id. at 170-71. Therefore, due to the fact that Woods was the sole owner of Western, and he "dominated" the board of directors, his

knowledge was imputed to Western. Id. Accordingly, also Western did not rely on the audit reports. Id. The court went on to find that Western could not claim that it should be able to recover because third parties were prevented from stopping the fraudulent activity that harmed the company due to their reliance on the audit reports. In particular, the court stated, "Western cannot claim it should recover from [the defendant] for not being rescued by a third party for something Western was already aware of and chose to ignore." Id.

Like the court in Ernst & Young, this Court finds that "[i]f nobody relied upon the audit, then the audit could not have been a substantial factor in bringing about the injury." Id. at 170 (quotation omitted); see Brisboy, 429 Mich. at 547. It would make little sense to find that Deloitte's audits were a cause of the damage to Venture if nobody actually relied on the audits. Gold cites to Allard v. Arthur Anderson & Co., 924 F. Supp. 488, 495 (S.D.N.Y. 1996), for the proposition that reliance is not required to show malpractice in Michigan. In Allard, however, the court only touched on the issue of whether reliance is a required element of a malpractice claim in dicta. Accordingly, this Court finds Allard unpersuasive in light of Ernst & Young and the fact that it appears that Deloitte's audits could not have caused any damage if nobody relied upon them.

Therefore, in order for Gold to establish that Deloitte was a cause of Venture's damages, he had to allege reliance upon the audits. Gold alleges that reliance by third-parties is sufficient. The Bankruptcy Court, however, found that Gold could not use the reliance of third parties to establish causation. (Doc. 120 at 41-43).

Gold cites to In re Sunpoint Secs., Inc. ("Sunpoint"), for the proposition that third-party reliance is sufficient in a case such as this. 377 B.R. 513 (Bankr. E.D. Tex. 2007).

In holding that third-party reliance was sufficient, the court in Sunpoint only cited to Ernst & Young.  Id. at 557-58.  In particular, the court "[noted] that [Ernst & Young], in identifying reliance as an essential part of causation, stated only that, 'If *nobody* relied on the audit, then the audit could not have been a substantial factor in bringing about the injury.'"  Id. at 558 (quotation omitted and emphasis added by the Sunpoint court); see Ernst & Young, 967 F.2d at 170.  Therefore, it appears that the Sunpoint court believed that Ernst & Young's statement that an audit could not be the cause of harm if nobody relied on it supported the proposition that an audit could be the cause of damage if anybody, including third parties with the power to prevent the damage, relied on it.  See Sunpoint, 377 B.R. at 557-58.  Not only does this conclusion not necessarily follow from the quoted statement in Ernst & Young, but contrary to the assertion of the Sunpoint court, this was not Ernst & Young's "only" statement on the issue.  See id. at 558.  The Ernst & Young opinion directly addressed the issue of third party reliance when it stated that the plaintiff "cannot claim it should recover from [the defendant] for not being rescued by a third party for something [the plaintiff] was already aware of and chose to ignore."  See Ernst & Young, 967 F.2d at 171.

The Court again agrees with the reasoning in Ernst & Young and finds that it would be inappropriate to permit Venture (or Gold as Venture's representative[2]) to recover from Deloitte because Deloitte's negligence prevented third parties from learning about, and stopping, improper transactions of which Venture was fully aware.  See id.  Accordingly, Gold is precluded from recovering damages from Deloitte if

---

[2] Gold, as the Trustee of Venture's bankruptcy estate, is the representative of the estate and has power to sue or be sued in that capacity.  See 11 U.S.C. § 323.

9

Venture was fully aware of the transactions. Gold alleges that Winget, Venture's sole shareholder, initiated and was fully aware of the improper transactions. Therefore, if Winget's knowledge and conduct is imputed to Venture, then Venture effectively was aware of, and in fact engaged in, the transactions itself.

In general, Michigan law imputes to an employer the knowledge acquired or acts committed by the company's employees within the scope of their employment. <u>Upjohn Co. v. New Hampshire Ins. Co.</u>, 438 Mich. 197, 213-14 (1991). This general rule, however, does not apply "where the agent acts in his own interest, adversely to his principal," pursuant to the adverse interest exception. <u>New Properties, Inc. v. George D. Newpower, Jr., Inc.</u>, 282 Mich. App. 120, 134 (2009); <u>MCA Fin. Corp. v. Grant Thornton, L.L.P.</u>, 263 Mich. App. 152, 163-64 (2004). This adverse interest exception is itself subject to the "sole actor" rule.

> The Michigan Court of Appeals discussed the sole actor rule as follows:
>
> The sole actor rule comes into play where the wrongdoer is, in essence, the corporation (the "sole actor"). Indeed, it has its roots in cases where the agent and the principal are literally the same person (literally a "sole actor") and thus information obtained by a person in his role as an agent is treated as also being obtained in his role as principal, even if his activities as agent are contrary to his interests as a principal. Therefore, where the wrongdoer acts contrary to the interests of the corporation, under the adverse interest exception the wrongdoer's conduct would not ordinarily be imputed to the corporation. But where the wrongdoer is a sole actor, the adverse interest exception is not applied and his wrongdoing is nevertheless imputed to the corporation. For example where a sole shareholder loots the corporation of its assets the adverse interest exception will not apply.

<u>MCA Fin. Corp.</u>, 263 Mich. App. at 169 (citations and footnotes omitted). Some courts, however, have not applied the sole actor rule when an innocent member of the company's management could and would have prevented the agent's actions if the

innocent member of management had known about them.  See Sharp Int'l Corp. v. KPMG L.L.P., 278 B.R. 28, 37 (Bankr. E.D.N.Y. 2002); see also MCA Fin. Corp., 263 Mich. App. at 169-70 (noting the innocent decision maker limitation to the sole actor exception, but declining to consider whether to apply it to the sole actor rule because the adverse interest exception did not apply in the case).  The rationale behind not applying the sole actor rule in cases where there is an innocent decision maker is "that the presence of a person with the ability to bring an end to the fraudulent activity at issue would demonstrate that principal and agent are distinct entities and that the total control necessary for an application of the [sole actor rule] is not present."  Sharp Int'l Corp., 278 B.R. at 28 (quotation omitted).  This shows that not applying the sole actor rule when innocent decision makers are present is not really an exception to the rule.  Instead, the presence of innocent decision makers is an indication that the sole actor rule should not apply because the wrongdoer was not really a sole actor.

     Gold alleges that Winget directed Venture to enter into the relevant transactions, and Gold does not contend that Winget lacked the authority to do so.  Accordingly, general agency principles would impute Winget's knowledge and conduct concerning the related-party transactions to Venture.  See Upjohn Co., 438 Mich. at 213-14.  Gold also alleges, however, that Winget was acting entirely in his own self-interest and adversely to Venture.  Therefore, the initial criteria for applying the adverse interest exception exist.  New Properties, Inc., 282 Mich. App. at 134.  Nevertheless, the Court finds that the adverse interest exception does not apply in this case because Winget, as Venture's sole shareholder, was the corporation's sole actor.  See MCA Fin. Corp., 263

Mich. App. at 169 (stating in dicta that, "where a sole shareholder loots the corporation of its assets the adverse interest exception will not apply").

Gold argues that the sole actor rule does not apply because there were innocent decision makers that would have prevented or stopped Winget's conduct if they had known about it. In particular, Gold contends that Williams, the independent member of the Fairness Committee, and Venture's creditors were innocent decision makers who had the power to stop the relevant transactions. In particular, if Venture had refused to stop the transactions upon the request of its creditors or Williams, then Venture's creditors could have declared Venture in default of its loan agreements. Furthermore, Gold alleges that in order to cure the default, Winget would have been forced to cease the unfair transactions. Gold's argument fails, however, because Williams and Venture's creditors only possessed coercive power over Venture; they were not members of Venture's management with decision-making authority.[3] Their coercive power does not show that Winget and Venture are distinct entities such that Winget did not have total control over the company (i.e., was the sole actor) for the purposes of the relevant transactions.

Gold cites to Ash v. Georgia-Pacific Corp., 957 F.2d 432 (7th Cir. 1992), and Bondi v. Grant Thornton Int'l (Parmalat), 421 F. Supp. 2d 703 (S.D.N.Y. 2006), for the proposition that Deloitte should not be allowed to appeal to the sole actor rule because Deloitte was aware of Winget's fraudulent activity. Ash and Parmalat, however, may be distinguished because they did not deal with a wrongdoer, like Winget, who was the

---

[3] Gold's argument that Williams' reliance on the audits constitutes reliance by Venture also fails for this reason.

sole shareholder of the corporation.  The rationale for applying the sole actor exception is much weaker where the wrongdoer is not the sole shareholder because the identity between the corporation and the wrongdoer is more attenuated in such cases. See MCA Fin. Corp., 263 Mich. App. at 169 (noting that the sole actor rule "has its roots in cases where the agent and the principal are literally the same person . . . and thus information obtained by a person in his role as an agent is treated as also being obtained in his role as principal, even if his activities as agent are contrary to his interests as a principal").

Furthermore, Ash, which Parmalat relied upon, declined to apply the sole actor rule because the defendant suborned and participated in the agent's fraudulent activity for its own profit.  Ash, 957 F.2d at 436.  In this case, Gold does not allege that Deloitte suborned and participated in Winget's fraudulent activity for its own profit.  As such, the Court does not find Ash and Parmalat to be persuasive as applied to the facts of this case.

Thus, the sole actor rule applies because Venture's creditors and Williams were not decision makers and, thus, there was no one within Venture who could stop Winget, Venture's sole shareholder, from engaging in the transactions.  See MCA Fin. Corp., 263 Mich. App. at 169 (indicating in dicta that the sole actor rule applies "where a sole shareholder loots the corporation of its assets").  Therefore, because the sole actor rule applies, the adverse interest exception does not apply and Winget's actions and knowledge are imputed to Venture under the general rules of imputation.  See id. at 163-64, 170; Upjohn Co., 438 Mich. at 213-14.

The imputation of Winget's actions and knowledge to Venture means that Venture knowingly engaged in the related-party transactions. Thus, Venture cannot claim that Deloitte's failure to disclose the related-party transactions in the audits caused it damage because it already knew of the transactions and, therefore, it was not relying on the audits. Furthermore, as just discussed, the fact that third parties relied upon the audits does not establish the causation element of Gold's negligence claim.

Accordingly, the professional negligence claim must be dismissed because Gold's allegations fail to establish that Deloitte's failure to disclose the related-party transactions in the audits was the cause of any damage to Venture. As such, the Court does not need to address Deloitte's alternative argument that the wrongful conduct rule prohibits Gold's claim. See MCA Fin. Corp., 263 Mich. App. at 156 (stating that a plaintiff's claim is barred when it is based, in whole or in part, on the plaintiff's own wrongdoing).

Count 2: Aiding and Abetting a Breach of Fiduciary Duty

The bankruptcy judge determined that aiding and abetting a breach of fiduciary duty is governed by the three-year statute of limitations in Mich. Comp. Laws § 600.5805(10), because it is a common law tort claim. Therefore, because the claim accrued when Venture filed for bankruptcy on March 28, 2003 and this action was filed on March 31, 2006, the bankruptcy judge concluded that the claim was barred by the three-year statute of limitations.

Gold objects that the bankruptcy judge erred because the claim is essentially one of malpractice. Accordingly, Gold contends that § 600.5805(6), and not § 600.5805(10),

is the statute of limitation applicable to his aiding and abetting a breach of fiduciary duty claim.[4] Michigan Comp. Laws § 600.5805(6) specifies the period of limitations for a claim of malpractice, whereas § 600.5805(10) specifies the period of limitations "for all other actions to recover damages for the death of a person, or for injury to a person or property."

Malpractice claims involve negligence that is committed by a professional within the course of a professional relationship. See Bryant v. Oakpointe Villa Nursing Centre 471 Mich. 411, 422 (2004) (addressing medical malpractice); BLACK'S LAW DICTIONARY 971 (7th ed. 1999). " To establish a prima facie case of negligence, a plaintiff must be able to prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." Haliw, 464 Mich. at 309-10. The elements of a claim for aiding and abetting a breach of fiduciary duty, however, are a (1) breach of a fiduciary duty by a person, (2) the defendant's knowledge and substantial assistance or encouragement of the person's breach of fiduciary duty, and (3) resulting harm. See L.A. Young Spring & Wire Corp. v. Falls, 307 Mich. 69, 106-07 (1943); Restatement (Second) of Torts § 876(b) (1979).

Gold contends that an aiding and abetting a breach of fiduciary duty claim should be considered a claim of malpractice and cites to Alken-Ziegler, Inc. v. Bearup, No. 264513, 2006 WL 572571 (Mich. Ct. App. Mar. 9, 2006), for support. In that

---

[4] The two-year term of limitations applicable to malpractice actions would not bar Gold's claims because, although it is shorter than the residual three-year term of limitations, it would not accrue until Deloitte discontinued servicing Venture, which was no earlier than May 4, 2004. See M.C.L. §§ 600.5805(6), (10) and 600.5838(1); (see also Bankr. case no. 06-4615, doc. 120 at 20).

unpublished case, the Michigan Court of Appeals held that a suit for breach of fiduciary duty against the plaintiff's attorney sounded in legal malpractice. The court noted that claims brought against attorneys on the basis of inadequate representation are claims of malpractice. Id. at *4. Furthermore, although the defendant attorney also had a fiduciary relationship with the plaintiff that was created by a general power of attorney document, this document "merely contemplated that [the defendant attorney] would provide adequate legal services." Id. The court found that because the defendant attorney already had this duty as a result of his status as the plaintiff's lawyer, any claim arising out of the fiduciary relationship between the plaintiff and the defendant attorney sounded only in legal malpractice. Id. Accordingly, plaintiff's claim of breach of fiduciary duty was subject to the two-year statute of limitations in M.C.L. § 600.5805(6). Id.

For the reasons that follow, the Court finds Alken unpersuasive as applied to this case and agrees with the Bankruptcy Court's determination that Gold's aiding and abetting a breach of fiduciary duty claim is not governed by the statute of limitations applicable to malpractice claims. Gold's claim is that Deloitte aided and abetted Winget's breach of *his* fiduciary duty to Venture. When determining the limitations period that controls a claim, "the type of interest allegedly harmed is the focal point," and in Gold's claim that Deloitte aided and abetted Winget's breach of fiduciary duty, the interest harmed was Venture's interest in Winget's performance of his fiduciary duties. Aldred v. O'Hara-Bruce, 184 Mich. App. 488, 490 (1990). Gold is not claiming that it was harmed due to Deloitte violating some duty it owed to Venture itself, which would be required for a negligence or malpractice claim. See Haliw, 464 Mich. at 309-

16

10; BLACK'S LAW DICTIONARY 971 (7th ed. 1999).  Because Gold is not claiming that Deloitte violated *its* fiduciary duty, Gold's reliance on Alken, which determined that an attorney's breach of his fiduciary duty to his client was a malpractice claim, is misplaced.  Accordingly, as Gold's aiding and abetting a breach of fiduciary duty claim does not involve a breach of Deloitte's duty to Venture, it is not governed by the statute of limitations applicable to malpractice actions.  Therefore, Gold's claim that Venture aided and abetted Winget's breach of his fiduciary duty is barred by the three-year limitations period in § 600.5805(10).

### V.    CONCLUSION

For the reasons discussed above, the Bankruptcy Court's recommendations regarding Counts 1, 2, and 3 are **ADOPTED.**  (See Bankr. case no. 06-4615, doc. 122).  Thus, Defendant's Motion to Dismiss, (Id., doc. 85), is **GRANTED** as to Counts 1, 2, and 3, and those counts are **DISMISSED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: June 15, 2009

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

<u>s/Bernadette M. Thebolt</u>
DEPUTY CLERK